**SO ORDERED.**

**DONE and SIGNED November 29, 2022.**



_____
**JOHN S. HODGE**
**UNITED STATES BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case Number: 21-10807 |
| | § | |
| Tloria M. McDavid | § | Chapter 13 |
|   Debtor | § | |
| _____ | § | |
| Tloria M. McDavid | § | |
|     Plaintiff | § | Adversary Proceeding |
| | § | |
| vs. | § | Case No. 22AP-01007 |
| | § | |
| Mario McDavid, Shan Jackson, and | § | |
|   Incline Casualty Company | § | |
|     Defendants | § | |

### **Memorandum Ruling**

This case involves a dispute regarding the debtor's entitlement to proceeds from a global settlement of claims involving multiple aggrieved parties. The claims arose from an automobile accident in which three women died, including the debtor's adult daughter. The accident occurred in Georgia involving an automobile and an eighteen-wheeler truck. The driver of the truck was at fault. The truck had

$1 million in liability insurance coverage.

The insurance company reached a settlement with all aggrieved parties, except the debtor. The agreement provided for the payment of $999,900 to the non-debtor aggrieved parties. When the insurance company offered to pay the debtor only $100 to satisfy her claims, she balked and filed this adversary proceeding to enjoin the settling parties from consummating their agreement. Her complaint asserts that her bankruptcy estate is entitled to a portion of the settlement proceeds.

The complaint alleges that the defendants violated the automatic stay when they entered into a settlement agreement which excluded the debtor. The complaint seeks to "reform" the settlement agreement to include the debtor or her bankruptcy estate as a party and to provide for an equitable distribution of the settlement proceeds to the estate. The complaint asserts multiple claims against the insurance company, the debtor's ex-husband (who is a party to the settlement agreement) and her ex-husband's attorney.

Defendants filed motions to dismiss the complaint. Docs. 49, 57. For the reasons that follow, the court will grant in part and deny in part the motions.

### The Allegations

The relevant facts for purposes of assessing the motions to dismiss are found in the First Amended Complaint (Doc. 39).

On October 8, 2021, Tloria M. McDavid ("**Debtor**" or "**Plaintiff**") filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. Several

months later, on March 4, 2022, Plaintiff's adult daughter, Shavon McDavid, was killed in an automobile accident caused by the driver of an eighteen-wheeler truck. Shavon was a passenger in an automobile. Two other people died in the wreck, including another passenger riding in the same car as Shavon and the driver of that car. First Amended Complaint, ¶ 4.

At the time of the accident, Incline Casualty Company ("**Incline**") provided insurance coverage for the eighteen-wheeler truck. ¶ 5. The insurance policy provided only $1 million in liability coverage. ¶ 5. Thus, regardless of the number of persons with claims resulting from the accident in question, the total insurance coverage is only $1 million.

The aggrieved parties are: 1) Jose Victor who is the husband of the driver of the car, 2) Alec Walton and Leon Walton who are the parents of the co-passenger, and 3) Plaintiff and her ex-husband, Mario McDavid, who are the parents of Shavon. ¶ 4. The aggrieved parties hired different lawyers to represent their interests to pursue wrongful death claims. The Waltons and Mario McDavid hired a lawyer (Shan Jackson) in Shreveport, Louisiana. Jose Victor hired a lawyer in Alabama. Plaintiff hired a lawyer in Georgia. ¶¶ 6-7.

On May 6, 2022, Plaintiff's Georgia lawyer made a demand upon Incline for the policy limits. ¶ 8. The demand sought the entirety of the insurance proceeds for herself. A few days later, on May 9, 2022, Plaintiff's Georgia lawyer filed a wrongful death lawsuit on her client's behalf in a Georgia state court. ¶ 9. The other aggrieved parties were not parties to the lawsuit. The lawsuit was later removed to

the United States District Court for the Northern District of Georgia. ¶15.

On May 10, 2022, Plaintiff's Georgia lawyer reached an agreement with all aggrieved parties regarding the split of the $1 million insurance proceeds. ¶10. Under this agreement, Plaintiff would receive $237,500 for her portion of the settlement. ¶10. Later, on that same day, Plaintiff fired her Georgia lawyer and began representing herself to pursue her wrongful death claim. ¶15.

Two days later, on May 12, 2022, Incline reached a "tentative" agreement with all aggrieved parties to resolve its liability by paying $50,000 to Jose Victor and $237,500 each to Alec Walton, Leon Walton, Mario McDavid, and Plaintiff. ¶10.

On May 12, 2022, Shan Jackson as counsel for Alec Walton, Leon Walton, and Mario McDavid, sent a series of written settlement offers to Incline. ¶¶ 10-11. In one of the earlier offers sent to Incline on that date, Ms. Jackson proposed a payment in the amount of $237,500 to Plaintiff. ¶10. Plaintiff timely "accepted" this offer in writing by saying "I don't have a problem accepting $237,500." ¶10. The complaint, however, does not allege that Plaintiff was an offeree of the offer or provide an explanation as to how Plaintiff could have "accepted" an offer that was not tendered to her. Instead, the complaint alleges that Incline was the offeree. ¶10 ("Jackson placed a May 13, 2022, deadline for Incline to accept the above listed payout.").

In any event, before Incline accepted the settlement offer, Ms. Jackson amended it on May 12, 2022. ¶¶ 10-11. Ms. Jackson's last offer proposed that Jose Victor would receive $50,000, Alec Walton would receive $237,500, Leon Walton

would receive $237,500 and Mario McDavid would receive $474,900. ¶¶10-11. That settlement offer did not provide for payment of any money to Plaintiff. ¶11. Incline timely accepted that offer. ¶11.

On May 12, 2022, Mario McDavid agreed to split the settlement amount he received with Plaintiff. ¶11.

Incline offered to pay $100 to Plaintiff which is the remainder of its policy limits. ¶13. The owner of the eighteen-wheeler truck and employer of the driver are judgment proof. ¶13. Thus, if the settling parties implement their settlement agreement, the bankruptcy estate will be unlikely to recover anything for its claims as the remaining responsible parties are likely unable to satisfy any judgment obtained by the estate. This would leave Plaintiff and the bankruptcy estate with no source of payment while the non-debtor claimants receive substantial distributions.

The complaint asserts various claims against Incline, Mario McDavid, and Shan Jackson (collectively, the "**Defendants**").

## Conclusions of Law and Analysis

### A. <u>Jurisdiction</u>

Defendants seek dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(1) which is applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012. Under Rule 12(b)(1), this court must dismiss the complaint if it finds that it lacks subject matter jurisdiction to hear the dispute.

A motion to dismiss under Rule 12(b)(1) is characterized as either facial or factual. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). A

facial attack is based solely upon the complaint itself, whereas a factual attack challenges the existence of the subject matter jurisdiction irrespective of the pleadings. *Id*. This means matters outside the pleadings—such as testimony and affidavits—are considered in a factual attack challenge. *Id*. The court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981).

In this case, Defendants have asserted a facial attack. As such, the court will look solely to the complaint to determine if it has jurisdiction.

It is important to note that the complaint does *not* assert a personal injury tort claim or a wrongful death claim. Instead, it seeks the following relief:

a.  Equitable or declaratory relief, damages and attorneys' fees for violations of the automatic stay. ¶¶ 18, 19.

b.  Equitable or declaratory relief, damages and attorneys' fees for "bankruptcy discrimination." ¶ 13.

c.  Injunctive or other equitable relief to prevent the consummation of the settlement agreement and/or to "reform" the settlement agreement to include Plaintiff as a settling party or to set aside the agreement. ¶ 18, Prayer ¶ IV.

d.  Equitable or declaratory relief pursuant to the provisions of O.C.G.A. § 19-

7-1(c)(2)(C) to recognize Plaintiff and her bankruptcy estate as the owner of one-half of the settlement funds paid to Mario McDavid. ¶¶ 19-21.

e.  Equitable or declaratory relief to avoid the settlement agreement or limit the application of any clause deemed to be "unconscionable" under O.C.G.A. § 11-2-302. ¶¶ 18, 19.

f.  Damages and attorneys' fees for violation of the provisions of O.C.G.A. § 33-4-6, § 33-6-34 and § 33-6-3 which govern settlement practices. ¶ 19.

g.  Declaratory relief for violation of O.C.G.A. § 19-11-67.1 which governs the formation of settlement agreements made prior to the filing of an Answer in a personal injury or wrongful death lawsuit. ¶ 19.

h.  Recovery of money from Mario McDavid for his agreement to "split" the settlement proceeds with Plaintiff. ¶ 11.

Under 28 U.S.C. § 157(a), "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings *arising under* title 11, or *arising in* a case under title 11 ...." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987) (emphasis added). For jurisdiction to "arise under" title 11, the cause of action asserted by the plaintiff must be either created or determined by title 11. *Id.* "Arising under" jurisdiction requires that the proceeding "invoke a substantive right provided by [the Bankruptcy Code]." *EOP-Colonnade of Dallas Ltd. P'ship v. Faulkner (In re Stonebridge Techs., Inc.)*, 430 F.3d 260, 267 (5th Cir. 2005).

In this case, the complaint seeks damages for violation of the automatic stay and for "bankruptcy discrimination." To prevail on those claims, Plaintiff would

need to invoke a substantive right provided by the Bankruptcy Code. As such, this court has "arising under" jurisdiction with respect to those claims.

With respect to the remainder of the claims asserted in the complaint, this court has "related to" jurisdiction. 28 U.S.C. § 157(c)(1) provides "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." A proceeding is "related to" a case under title 11 "when the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995) (alteration in original) (citations omitted). In other words, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.*

Here, Plaintiff is the debtor in the underlying chapter 13 bankruptcy case. The outcome of this adversary proceeding could *conceivably* impact the administration of her bankruptcy case because if she prevails in the instant suit and is awarded damages, a recovery of money will become property of the estate pursuant to 11 U.S.C. § 541(a) and can be used to satisfy allowed claims. *See Beitel v. OCA, Inc. (In re OCA, Inc.)*, 551 F.3d 359, 367 (5th Cir. 2008) (finding that the adversary proceeding could have an effect on the bankruptcy estate because a judgment against the defendant would increase the estate).

This court concludes that it has jurisdiction over this matter pursuant to 28

U.S.C. § 1334(b) and by virtue of the reference by the district court pursuant to 28 U.S.C. § 157(a) and LR 83.4.1. Venue is proper in this district. 28 U.S.C. §§ 1408 and 1409(a). This matter constitutes a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

## B. <u>Motion to Dismiss under Rule 12(b)(6)</u>

Defendants seek to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Lindsay v. United States,* 4 F.4th 292, 294 (5th Cir. 2021). However, the court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.,* 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Federal Rule of Civil Procedure 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In *Ashcroft v. Iqbal,* the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Rule 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's

grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir.2009) (internal quotation marks removed).

The court will examine each claim asserted in the complaint.

### *Whether the Complaint States a Claim for Violation of the Automatic Stay*

The complaint (¶¶ 18, 19) seeks a declaratory judgment, an injunction, and actual and punitive damages arising from Defendants' alleged violations of the automatic stay pursuant to Section 362(a). That section provides that "a [bankruptcy] petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities ... of any act to ... exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Actions in violation of the automatic stay may trigger serious consequences, including an award of "actual damages, including costs and attorneys' fees, and, in appropriate circumstances ... punitive damages." 11 U.S.C. § 362(k)(1).

To state a claim under 11 U.S.C. § 362(k)(1) based upon a violation of the automatic stay under § 362(a)(3), an individual debtor must allege that: 1) the automatic stay was in effect at the time of the alleged violation; 2) the property at issue was property of the estate; and 3) the conduct in question constitutes a violation of the automatic stay. *In re Chesnut*, 422 F.3d 298, 302 (5th Cir. 2005). The second and third elements are at issue in this case.

The complaint suggests that Defendants violated the automatic stay by divvying up the proceeds of the insurance policy. It also suggests that Defendants

violated the stay by excluding Plaintiff from an equitable distribution of the insurance proceeds.

Simply put, the complaint does not state a plausible claim for violation of the automatic stay because the property at issue – the insurance policy and its proceeds – is not property of the estate. As such, the complaint fails to plead all elements required by the Fifth Circuit to establish a claim for violation of the automatic stay.

### *Whether the Complaint States a Claim for Bankruptcy Discrimination*

The complaint (¶ 13) seeks a declaratory judgment, an injunction, and actual damages arising from Defendants' alleged discrimination against Plaintiff due to her status as a chapter 13 debtor. The complaint alleges that Incline and Jackson "declined to recognize Plaintiff's authority" to negotiate a resolution of her causes of action due to her bankruptcy which constituted "bankruptcy discrimination." ¶ 13.

Under certain circumstances not applicable in this case, the Bankruptcy Code prohibits private parties from discriminating against debtors who filed bankruptcy. 11 U.S.C. § 525(b) provides that "private employer[s]" are prohibited from terminating the employment of, or discriminating with respect to employment against, an individual "solely" because that individual "is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act." In this case, the complaint does not allege that any Defendant is a "private employer" who discriminated against Plaintiff due to her bankruptcy.

The complaint fails to state a plausible claim for relief for "bankruptcy discrimination" under 11 U.S.C. § 525(b).

### *Whether the Complaint States a Claim for "Reformation" of the Settlement*

The complaint (¶ 18, Prayer ¶ I) seeks an injunction or other equitable relief to prevent the consummation of the settlement. The complaint seeks to "reform" the agreement to include Plaintiff as a settling party and provide for an equitable distribution of the proceeds to her. ¶ 18. Alternatively, the complaint seeks to set aside the agreement in its entirety. (Prayer ¶ IV).

The complaint does not allege that Plaintiff is a party to the settlement or is an intended beneficiary or has privity with anyone that is a party to the agreement. As such, she lacks standing to "reform" the agreement. In Georgia, "[r]eformation of written instruments may be had by the immediate parties thereto and by those standing in privity with them, such as their successors." *U. S. Bank, Nat'l Ass'n as Tr. of Cabana Series IV Tr. v. Carrington Mortg. Servs., LLC,* 364 Ga. App. 179, 182–83, 874 S.E.2d 372, 376 (2022) (citing *Ins. Agency of Glynn County v. Atlanta Cas. Co.*, 255 Ga. App. 323, 324 (1), 565 S.E.2d 547 (2002)).

Under Georgia law, for a third party to have standing to enforce or reform a contract, "it must appear clearly from the contract that it was intended for the benefit of the third party. The mere fact that the third party would benefit from performance of the agreement is not alone sufficient." *Bouboulis v. Scottsdale Ins. Co.*, 860 F. Supp. 2d 1364, 1373 (N.D. Ga. 2012) (citing *Satilla Cmty. Serv. Bd. v. Satilla Health Servs., Inc.,* 275 Ga. 805, 810, 573 S.E.2d 31 (2002)). To evince such intent, there must be a "promise by the promisor to the promisee to render some performance to [the] third person, and it must appear that both the promisor and

the promisee intended that the third person should be the beneficiary." *AT & T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.,* 494 F.3d 1356, 1361 (citing *Danjor, Inc. v. Corporate Constr., Inc.,* 272 Ga.App. 695, 697, 613 S.E.2d 218 (2005)). A third-party beneficiary has only those rights as granted to the parties under the contract and no greater. *Allstate Ins. Co. v. Sutton,* 290 Ga.App. 154, 160, 658 S.E.2d 909 (2008). Construction of the contract is generally required to determine the extent of the third-party's rights. *Id.* at 160–161, 658 S.E.2d 909.

In this case, the complaint does not allege that there is any provision in the settlement agreement that designates Plaintiff as having any rights under the settlement. At most, the complaint alleges that Plaintiff had a "tentative" agreement with Incline and the settling parties to include a payment of $237,500 to Plaintiff. ¶ 10. A "tentative" agreement, however, is the equivalent of no agreement at all. The complaint does not allege that Plaintiff was omitted from the final version of the agreement due to a mistake made by any of the settling parties. Instead, the complaint alleges that it was unfair for the settling parties to exclude her from the agreement.

Essentially, the complaint seeks to throw out the binding agreement between the settling parties and have this court rewrite a new and different contract to include the debtor as a party and to reallocate the distribution of the settlement proceeds among the parties. Georgia law does not permit a court to grant such relief. *See, K D Unlimited Inc. v. Owners Ins. Co.,* 522 F. Supp. 3d 1287, 1292 (N.D. Ga. 2021) (under Georgia law, "the Court cannot rewrite the contract…").

The complaint fails to state a plausible claim for relief for "reformation" of the settlement agreement or to set it aside.

### *Whether the Complaint States a Claim under O.C.G.A. § 19-7-1(c)(2)(C)*

The complaint (¶¶ 19-21) seeks declaratory or equitable relief pursuant to the provisions of O.C.G.A. § 19-7-1(c)(2)(C) to recognize Plaintiff and her bankruptcy estate as the owner of one-half of the settlement funds paid to Mario McDavid. According to the complaint, this statute entitles Plaintiff "to have the settlement received by Mario McDavid apportioned between them." ¶ 21.

In Georgia, "parents have a right to recover for the life of a child who dies as the result of negligence and has no other direct heirs (i.e., a spouse or child)." *Jackson v. Jones*, 358 Ga. App. 69, 71–72, 853 S.E.2d 663, 666 (2021), *cert. denied* (July 7, 2021) (citing OCGA § 19-7-1(c)(2)). Where, as here, both parents of the deceased child are living but are divorced, separated, or living apart,

> … the right shall be in both parents. However, if the parents are divorced, separated, or living apart *and one parent refuses to proceed or cannot be located to proceed* to recover for the wrongful death of a child, the other parent shall have the right to contract for representation on behalf of both parents, thereby binding both parents, and the right to proceed on behalf of both parents to recover for the homicide of the child *with any ultimate recovery to be shared by the parents as provided in this subsection.* Unless a motion is filed as provided in paragraph (6) of this subsection, such a judgment shall be divided equally between the parents by the judgment; and the share of an absent parent shall be held for such time, on such terms, and with such direction for payment if the absent parent is not found as the judgment directs. Payment of a judgment awarded to the parent or parents having the cause of action under this subparagraph or the execution of a release by a parent or parents having a cause of action under this subparagraph shall constitute a full and complete discharge of the judgment debtor or releasee. If, after two years from the date of any

recovery, the share of an absent parent has not been paid to the absent parent, the other parent can petition the court for the funds, and the recovery, under appropriate court order, shall be paid over to the parent who initiated the recovery.

Ga. Code Ann. § 19-7-1(c)(2)(C) (emphasis added).

By its terms, this statute applies solely where both parents of the deceased child are living but are divorced, separated, or living apart *and one parent refuses to proceed or cannot be located to proceed* to recover for the wrongful death of a child. The complaint does not allege that Plaintiff refused to proceed or could not be located. In fact, the complaint alleges that Plaintiff filed her own lawsuit to recover for the wrongful death of her child and sought to recover the entirety of the insurance proceeds for herself. ¶¶ 8, 9, 15.

The complaint fails to state a plausible claim for relief under O.C.G.A. § 19-7-1(c)(2)(C).

### Whether the Complaint States a Claim under O.C.G.A. § 11-2-302

The complaint (¶¶ 18-19) seeks declaratory or equitable relief to avoid the settlement agreement or limit the application of any clause deemed to be "unconscionable" under O.C.G.A. § 11-2-302.

The statute provides:

**§ 11-2-302. Unconscionable contract or clause**

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

Ga. Code Ann. § 11-2-302.

O.C.G.A. § 11-2-302 is a section in Georgia's version of the Uniform Commercial Code. It applies to transactions in goods. *See*, O.C.G.A. § 11-2-102. It has no application to the facts alleged in the complaint.

The complaint fails to state a plausible claim for relief under O.C.G.A. § 11-2-302.

### Whether the Complaint States a Claim under OCGA §33-4-6, §33-6-34 and §33-6-3

The complaint (¶¶ 18-19) seeks damages and attorneys' fees against Incline for its alleged bad faith handling of Plaintiff's claim, in violation of several provisions of Georgia's Unfair Claims Settlement Practices Act, O.C.G.A. §§ 33-6-30, et seq. ("UCSPA"), including O.C.G.A. § 33-4-6, § 33-6-34 and § 33-6-3. ¶ 19. Under the UCSPA, insurance companies are prohibited from engaging in certain activities when settling claims with their insureds. *See* O.C.G.A. § 33-6-34.

By its terms, the UCSPA states: "nothing contained in this article shall be construed to create or imply a private cause of action for a violation of this article." O.C.G.A. § 33-6-37. See, *Matthews v. State Farm Fire & Cas. Co.*, No. 1:10-CV-1641-SCJ, 2012 WL 12964370, at *12 (N.D. Ga. Feb. 13, 2012), aff'd. 500 F. App'x 836 (11th Cir. 2012) ("By the plain language of the Act, O.C.G.A. § 33-6-37, there is no private cause of action in Georgia under the Unfair Claims Settlement Practices

Act."). Thus, it is not proper for Plaintiff to assert any claims under the UCSPA.

The complaint fails to state a plausible claim for relief under the UCSPA.

### *Whether the Complaint States a Claim under OCGA § 19-11-67.1*

The complaint (¶19) seeks declaratory relief for Incline's alleged violation of O.C.G.A. § 19-11-67.1 which governs the formation of settlement agreements made prior to the filing of an Answer in a personal injury or wrongful death lawsuit. In pertinent part, the statute prohibits an offeror from demanding acceptance of a pre-Answer settlement offer in less than 30 days. O.C.G.A. § 9-11-67.1(a)(1)(A); *Anderson v. Jones*, No. A22A0812, 2022 WL 4690565, at *4 (Ga. Ct. App. Oct. 3, 2022) (holding that "the minimum amount of time in which the offeror may demand acceptance is 30 days" and that interpretation is "consistent with the statute's codified purpose of curtailing a claimant's ability to set up a claim of bad faith against an insurance company by imposing unreasonably short deadlines for accepting an offer"). The complaint alleges that the settlement offer made by the non-debtor aggrieved parties (exclusive of Plaintiff) demanded acceptance in less than 48 hours, which is far shorter than the timeframe permitted by statute.

The statute provides:

**§ 9-11-67.1. Offer to settle tort claim must be in writing; terms**

(a) Prior to the filing of an answer, any offer to settle a tort claim for personal injury, bodily injury, or death arising from the use of a motor vehicle and prepared by or with the assistance of an attorney on behalf of a claimant or claimants shall be in writing and:

(1) Shall contain the following material terms:

(A) The time period within which such offer must be accepted, which

shall be not less than 30 days from receipt of the offer;

(B) Amount of monetary payment;

(C) The party or parties the claimant or claimants will release if such offer is accepted;

(D) For any type of release, whether the release is full or limited and an itemization of what the claimant or claimants will provide to each releasee; and

(E) The claims to be released;

(2) Shall include medical or other records in the offeror's possession incurred as a result of the subject claim that are sufficient to allow the recipient to evaluate the claim; and

(3) May include a term requiring that in order to settle the claim the recipient shall provide the offeror a statement, under oath, regarding whether all liability and casualty insurance issued by the recipient that provides coverage or that may provide coverage for the claim at issue has been disclosed to the offeror.

(b)(1) Unless otherwise agreed by both the offeror and the recipients in writing, the terms outlined in subsection (a) of this Code section shall be the only terms which can be included in an offer to settle made under this Code section.

(2) The recipients of an offer to settle made under this Code section may accept the same by providing written acceptance of the material terms outlined in subsection (a) of this Code section in their entirety.

*(c) Nothing in this Code section is intended to prohibit parties from reaching a settlement agreement in a manner and under terms otherwise agreeable to both the offeror and recipient of the offer.*

(d) Upon receipt of an offer to settle set forth in subsection (a) of this Code section, the recipients shall have the right to seek clarification regarding the terms, the terms of the release, liens, subrogation claims, standing to release claims, medical bills, medical records, and other relevant facts. An attempt to seek reasonable clarification shall be in writing and shall not be deemed a counteroffer. In addition, if a release is not provided with an offer to settle, a recipient's providing of a proposed release shall not be deemed a counteroffer.

(e) An offer to settle made pursuant to this Code section shall be sent by certified mail or statutory overnight delivery, return receipt requested, shall specifically reference this Code section, and shall include an address or a facsimile number or email address to which a written acceptance pursuant to subsection (b) of this Code section may be provided.

(f) The person or entity providing payment to satisfy the material term set forth in subparagraph (a)(1)(B) of this Code section may elect to provide payment by any one or more of the following means:

(1) Cash;
(2) Money order;
(3) Wire transfer;
(4) A cashier's check issued by a bank or other financial institution;
(5) A draft or bank check issued by an insurance company; or
(6) Electronic funds transfer or other method of electronic payment.

(g) Nothing in this Code section shall prohibit a party making an offer to settle from requiring payment within a specified period; provided, however, that such date shall not be less than 40 days from the receipt of the offer.

(h) This Code section shall apply to causes of action for personal injury, bodily injury, and death arising from the use of a motor vehicle on or after July 1, 2021.

Ga. Code Ann. § 9-11-67.1 (emphasis added).

The complaint alleges that the non-debtor aggrieved parties submitted a series of settlement offers to Incline. ¶¶ 10-11. Incline accepted their last offer. ¶ 11. Although the complaint clearly alleges that their last offer demanded acceptance within 48 hours (which is far shorter than the timeframe provided in O.C.G.A. § 9-11-67.1(a)), Georgia law expressly permits the parties to reach "a settlement agreement in a manner and under terms otherwise agreeable to both the offeror and recipient of the offer." O.C.G.A. § 9-11-67.1(c). Thus, when Incline and the non-

debtor aggrieved parties entered into their agreement, it represented a settlement that was "otherwise agreeable to both the offeror and recipient of the offer" within the meaning of O.C.G.A. § 9-11-67.1(c).

The complaint fails to state a plausible claim for relief under O.C.G.A. § 9-11-67.1. Instead, the complaint expresses grievances about a settlement offer in which Plaintiff is not a party. ¶10.

### *Whether the Complaint States a Claim that Mario McDavid Agreed to Split Proceeds*

The complaint (¶11) seeks declaratory relief and money damages against Mario McDavid for his alleged agreement to "split" the settlement proceeds with Plaintiff. Viewing the facts alleged in the complaint in a light most favorable to Plaintiff, the court concludes that the complaint adequately pleads a valid claim for relief against Mario McDavid that he agreed to "split" his portion of the settlement with Plaintiff.

### C. <u>Motion for Judgment on the Pleadings under Rule 12(c)</u>

Defendants filed Answers which included judicial estoppel as an affirmative defense. They now seek a judgment on the pleadings under Rule 12(c) based on the doctrine of judicial estoppel. They contend that Plaintiff failed to timely list her wrongful death claim as an asset in her bankruptcy schedules. As a result, Defendants ask this court to invoke the equitable doctrine of judicial estoppel and to dismiss the complaint.

The Fifth Circuit has stated that judicial estoppel is properly invoked where "(1) the party against whom judicial estoppel is sought has asserted a legal position

which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc). Defendants argue that all these conditions are satisfied in this case.

The Fifth Circuit has noted that "[d]ismissing a case on the basis of an affirmative defense is properly done under Rule 12(c), not Rule 12(b)(6)." *Cox v. Richards*, 761 F. App'x 244, 247–48 (5th Cir. 2019) (quoting *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975–76 (7th Cir. 2013)). The Fifth Circuit has also noted that estoppel is an affirmative defense which must be pled in a responsive pleading under Federal Rule of Civil Procedure 8(c). *Cox,* 761 F. App'x at 247-248.

Motions for judgment on the pleadings enable courts to dispose of cases "where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir.2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.,* 914 F.2d 74, 76 (5th Cir.1990)). On a motion for judgment on the pleadings, the court should liberally construe the pleadings in the light most favorable to the plaintiff and accept as true all well-pled facts. A court should not dismiss the case unless the plaintiff cannot prove any set of facts entitling it to relief. *Great Plains,* 313 F.3d at 312–13 (citations omitted). The difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is that a court ruling on a motion under Rule 12(c) *may* properly consider documents and facts outside the pleadings, if they can be the subject of

judicial notice. *Id.* at 313–14.

In this case, the court will take judicial notice of the bankruptcy schedules filed in the main bankruptcy case by Plaintiff. The record reflects that Plaintiff amended her bankruptcy schedules to list her post-petition wrongful death claim approximately 80 days after the claim arose. In the context of this case, the court concludes that Plaintiff timely amended her bankruptcy schedules to disclose the new asset to the court and her creditors.

The court also concludes that: 1) Plaintiff did not assert a legal position which is plainly inconsistent with a prior position, and 2) this court did not rely on any prior position of Plaintiff in taking any action in her bankruptcy case. When Plaintiff amended her bankruptcy schedules, she promptly sought authority from the bankruptcy court to employ special counsel who, in turn, filed this adversary proceeding. The complaint seeks to recover money for the bankruptcy estate, not for the debtor personally.

The court declines to invoke the equitable doctrine of judicial estoppel. The motion for judgment on the pleadings filed pursuant to Rule 12(c) should be denied.

## Conclusion

For the reasons stated, the motions under Rules 12(b)(1) and 12(c) are hereby denied.

With respect to the Rule 12(b)(6) motion, the court concludes that the facts offered in the complaint are not adequate to plead a plausible claim for relief against Incline or Jackson. All claims against Incline and Jackson are dismissed

pursuant to Rule 12(b)(6).

With respect to the claims against Mario McDavid, the complaint states a valid claim for relief regarding his alleged agreement to pay Plaintiff a portion of the settlement proceeds. All other claims against Mario McDavid are dismissed pursuant to Rule 12(b)(6).

The court will enter a separate order in accordance with this ruling.

###